Dr. James G. Ricketts Executive Director Colorado Department of Corrections 6385 North Academy Boulevard Colorado Springs, CO 80907
Dear Dr. Ricketts:
This opinion letter is in response to your letter, received by this office on August 10, 1981 in which you inquired as to whether or not Department of Corrections' buildings could be assigned to Correctional Industries in a manner that would permit the use of controlled maintenance funds for the upkeep of such buildings.
QUESTION PRESENTED AND CONCLUSION
Your request for an attorney general's opinion presents one question:
a. Whether or not the Department of Corrections may utilize controlled maintenance funds for the upkeep of buildings assigned to the Division of Correctional Industries?
 My conclusion is "yes." It is my opinion that controlled maintenance funds may be used for the upkeep of buildings assigned to the division of correctional industries so long as the project for which such funds will be utilized otherwise qualifies under the controlled maintenance statute.
ANALYSIS
The following statutes are dispositive of this question:
1. C.R.S. 1973, 24-30-1301(2)(a), as amended, which states:
(2) (a) "Controlled maintenance" means:
 (I) Corrective repairs or replacement used for existing state-owned, general-funded buildings and other physical facilities, including, but not limited to, utilities and site improvements, which are suitable for retention and use for at least five years, and replacement and repair of the fixed equipment necessary for the operation of such facilities, when such work is not funded in an agency's operating budget to be accomplished by the agency's physical plant staff;
(Emphasis added.)
(II) (C)ontrolled maintenance funds may not be used for:
 (A) Corrective repairs or replacement for buildings and other physical facilities and replacement or repair of the fixed and movable equipment necessary for the operation of physical facilities, when such work is funded in an agency's operating budget to be accomplished by the agency's physical plant staff; for the repair and replacement of fixed and movable equipment necessary for the conduct of programs (such repair and replacement is funded as capital outlay); for rented or leased facilities, or facilities constructed and maintained by self-liquidating property funds. Minor maintenance items shall not be accumulated to create a controlled maintenance project, nor shall minor maintenance work be accomplished as a part of a controlled maintenance project unless the work is directly related.
 (B) Any work properly categorized as capital construction or capital outlay.
 (b) "Controlled maintenance" may include the purchase of the services of architects, engineers, and other consultants to investigate conditions and prepare recommendations for the correction thereof, to prepare plans and specifications, and to supervise the execution of such controlled maintenance projects as provided by appropriation by the general assembly.
2. C.R.S. 1973, 17-24-109(4) as amended, which states:
 (4) A portion of the real property at each correctional institution shall be designated by the executive director as an industry area, and all facilities and buildings within this area shall be assigned to the division in cooperation with the division of adult services. The responsibility for the maintenance and upkeep of these facilities, buildings, and grounds shall be vested in the division.
3. C.R.S. 1973, 17-24-106, which lists among the general powers of the Division of Correctional Industries the following:
 (d) To acquire or purchase equipment, raw materials, supplies, office space, insurance, and services and to engage the supervisory personnel necessary to establish and maintain for the state programs at the state's correctional institutions pursuant to law;
 (e) To utilize the labor services of prisoners in the manufacture or production of goods and services that are needed for the construction, operation, or maintenance of any office, department, institution, or agency supported in whole or in part by the state, any political subdivision of the state, or the federal government;
. . . .
 (k) To purchase, lease, trade, exchange, or otherwise acquire, maintain, and dispose of real property and personal property and any interest therein pursuant to law;
4. C.R.S. 1973, 17-24-102(1), as amended, which states that it is the intent of the legislature to:
 (a) Create a division of correctional industries which is profit-oriented, which generates revenue for its operations and capital investment, which partly reimburses the general fund for the expense of correctional services . . . .
. . . .
(Emphasis added.)
 (c) Provide an environment for the operation of correctional industries that closely resembles
the environment for the business operations of a private corporate entity;
(Emphasis added.)
5. C.R.S. 1973, 17-24-113(1), which states:
 (1) The division is hereby authorized, within appropriations which may be at its disposal, to procure or cause to be procured and maintained all necessary materials, supplies, space, services, and equipment required for the proper operation of the division.
Clearly, these statutory provisions permit the executive director to assign buildings to the Division of Correctional Industries for industries use. See 17-24-109(4). These statutes also permit the division to acquire office space and also to " utilize the labor services of prisoners in maintenance of any office, department, institution, or agency supported in whole or in part by the state. See 17-24-106(e)
However, under 17-24-109, the Division of Correctional Industries must provide for the maintenance of its own facilities using either its own personnel, or inmate labor. Further, under24-30-1301, controlled maintenance funds may not be utilized by any state agency for the kind of routine, minor, maintenance which would most certainly fall under the purview of 17-24-109 as being the exclusive responsibility of the Division of Correctional Industries. Under 17-24-106, both staff and inmates are available for maintenance work. Therefore, the division of correctional industries should have the resources to perform its own routine maintenance and controlled maintenance funds clearly could not be utilized for any such routine functions.
Conversely, the Division of Correctional Industries may be treated as most other state agencies for the receipt of controlled maintenance funds for major maintenance projects of the kind contemplated by 24-30-1301. Assuming that the Department of Corrections is able to obtain controlled maintenance funds, not specifically earmarked for a division other than the division of correctional industries, such funds may be allocated for correctional industries use as long as they will be utilized for the kind of projects authorized by 24-30-1301.
The Division of Correctional Industries must be "profit oriented" and operated in a manner similar to a private business, see17-24-102. However, these statutes do not mandate that the division make a profit or operate as a fully self-sufficient private business. Therefore, the division cannot properly be categorized as a self-liquidating property fund not entitled to controlled maintenance funds under 24-30-1301.
Thus, controlled maintenance funds may be given to the Division of Correctional Industries if the project for which these funds are to be used otherwise qualifies under 24-30-1301. In this respect the project may not be some form of minor or routine maintenance but must be some relatively major improvement which does not fall under the definition of a capital outlay under24-30-1301(1). Such funds may be assigned to the Division of Correctional Industries even if the structure upon which the improvement is to be made is a building built by or otherwise assigned to that division. See 24-30-1301(2)(a)(I).
In other words the Division of Correctional Industries may receive controlled maintenance funds without regard to whether the building upon which repairs are made is assigned to the Division of Correctional Industries or to some other division within the department. The determinative factor is the project, not the building assignment. In this regard, controlled maintenance funds could not be used for routine maintenance on a particular building even if it was assigned to some other division within the department. No controlled maintenance funds may be utilized for any work which is funded by an agency's operating budget and is to be accomplished by that agency's physical plant staff.
Thus, the department need not contemplate any reassignment of buildings among its various divisions. If a building operated by the Division of Correctional Industries needs certain major improvements other than capital outlays, it may legally apply for and receive controlled maintenance funds.
SUMMARY
Controlled Maintenance Funds may be utilized by the Division of Correctional Industries as long as the particular project being funded otherwise qualifies under the applicable statute.
Very truly yours,
 J.D. MacFARLANE Attorney General
PUBLIC BUILDINGS STATE AGENCIES CORRECTIONAL FACILITIES CORRECTIONS PROPERTY, STATE
C.R.S. 1973, 17-24-102
C.R.S. 1973, 17-24-104
C.R.S. 1973, 17-24-106
C.R.S. 1973, 17-24-113
C.R.S. 1973, 24-30-1301
CORRECTIONS, DEPT. OF Administration ADMINISTRATION, DEPT. OF
Controlled Maintenance Funds may be utilized by the Department of Corrections, Division of correctional Industries, as long as the project for which the funds will be used otherwise qualifies under the applicable statute.